CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

MAR 22 2018

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **DEMOND L. JONES,** ) | Civil Action No. 7:16-cv-00441 |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | |
| ) | By: Jackson L. Kiser |
| **LESLIE FLEMING, et al.,** ) | Senior United States District Judge |
| Defendants. ) | |

Demond L. Jones, a Virginia inmate proceeding pro se, filed a civil rights action pursuant to 42 U.S.C. § 1983 against two defendants: Leslie Fleming, who is the Warden of Wallens Ridge State Prison ("WRSP"), and Correctional Officer ("C/O") Brandon Woodard. Plaintiff alleges that C/O Woodard used excessive force in violation of the Eighth Amendment and that Warden Fleming failed to intervene. Defendants filed a motion for summary judgment, and Plaintiff responded, making this matter ripe for disposition. After reviewing the record, I grant in part and deny in part the motion for summary judgment.

## I.

C/O Woodard escorted Plaintiff to his cell on October 30, 2015, after Plaintiff chastised C/O Woodard for talking about another inmate. When they arrived at the cell door, C/O Woodard told Plaintiff to enter the cell and kneel down, and Plaintiff complied. Per normal procedure, Plaintiff next put his cuffed hands through the tray slot for the handcuffs to be removed. Although his hands were already in the tray slot, C/O Woodard aggressively and unnecessarily pulled the handcuff tether, causing Jones immense pain. C/O Woodard then announced, "Put your hands on the tray slot," to cover up his pulling of the tether. After a minute or two, Plaintiff cried out in pain because his hands had been rubbing against a sharp steel edge inside the slot. Plaintiff asked C/O Woodard to stop inflicting pain. Nevertheless,

C/O Woodard continued to pull at the tether for two more minutes, and Plaintiff experienced continued pain as the steel edge cut into Plaintiff's arm. C/O Woodard then stopped, removed the handcuffs, and told Plaintiff that he should mind his business and not chastise officers. Besides experiencing immense pain, Plaintiff's hands, wrists, and arms were swollen and bloody, and he could not move his right wrist. A nurse later diagnosed a high wrist sprain.

Defendants dispute Plaintiff's allegations, explaining that the escort was unremarkable. Once Plaintiff was inside the cell, C/O Woodard told Plaintiff to put his cuffed hands on the tray slot, but Plaintiff refused. C/O Woodard repeated the order, Plaintiff complied, and C/O Woodard removed the restraints without the use of force. Shortly after, Plaintiff complained that his arms had been injured during the handcuff removal. An officer checked Plaintiff's arms for injury and found none but called for a nurse, anyway. The nurse noted that Plaintiff's arms had abrasions, but no bleeding or other red areas. The responding officer reported on his internal incident report that Plaintiff appeared to have scratched his forearms between the officer's first visit and the nurse's examination.

Plaintiff filed a Level I Grievance about C/O Woodard's actions. After investigation of rapid-eye video, staff incident reports, and medical records, Plaintiff's claims were considered to be unfounded. On appeal, Warden Fleming upheld the unfounded decision of the Level I Grievance Response.

Plaintiff presents two claims. First, C/O Woodard violated the Eighth Amendment by maliciously and sadistically inflicting pain. Second, Warden Fleming is liable for "encouraging" Woodard's constitutional violation. Defendants have filed a motion for summary judgment, supported by affidavits from C/O Woodard and Warden Fleming.

## II.

### A.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." Id. at 250. In considering a motion for summary judgment, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

A court must grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. The nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. Glover v. Oppleman, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." Id. (quoting Celotex, 477 U.S. at 317).

## B.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a defendant asserts the affirmative defense of qualified immunity, the court must determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right[,]" and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. at 232 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). In determining whether the law was clearly established, the court "'ordinarily need not look beyond the decisions of the Supreme Court, [the Fourth Circuit Court of Appeals], and the highest court of the state in which the case arose.'" Lefemine v. Wideman, 672 F.3d 292, 298 (4th Cir. 2012) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 251 (1999)), vacated on other grounds, 568 U.S. 1 (2012). The onus is on a defendant asserting qualified immunity to actually put forth authorities and argument showing that he is entitled to it. Meyers v. Baltimore Cty., Md., 713 F.3d 723, 731 (4th Cir. 2013).

## III.

## A.

Plaintiff first asserts that C/O Woodard violated the Eighth Amendment's Cruel and Unusual Punishments Clause by using excessive force while removing the handcuffs on October 30, 2015. The Eighth Amendment's prohibition on cruel and unusual punishment forbids the malicious and sadistic infliction of pain on prisoners. Whitley v. Albers, 475 U.S. 312, 319 (1986). To determine "whether force was applied in a good faith effort to maintain or restore

4

discipline or maliciously and sadistically for the very purpose of causing harm," a court considers the following factors: (1) the need for application of force, (2) the relationship between the need and the amount of force used, (3) the extent of any inflicted injury, (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and (5) any efforts made to temper the severity of a forceful response. Id. at 321.

"It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id. "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Id. Further, the Eighth Amendment does not require significant injury: "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

All of the Whitley factors are in dispute. For factors 1, 2, 4, and 5, Plaintiff alleges that he followed the rules, he was not being disruptive, he acquiesced with C/O Woodard's command to place his hands in the meal tray, and that C/O Woodard's actions were unnecessary and unjustified.[1] Meanwhile, C/O Woodard states that Plaintiff did not obey his order at first, he repeated his request, and Plaintiff finally complied without any use of force. The Defendants claim that Plaintiff's initial refusal resulted in a serious security risk, and that, if any force was

---

[1] Plaintiff also submitted affidavits from three inmates who witnessed the event. The inmates state that C/O Woodard injured Plaintiff despite Plaintiff following orders.

5

used, C/O Woodard tempered the severity of his response because he used non-lethal methods that did not cause any significant or lasting injury to Plaintiff.

For the third factor, Plaintiff states that C/O Woodard caused multiple injuries, including: a sprain or torn ligament in his wrist area, immobility in his right wrist, and red swelling and bleeding in his hands, wrists, and arms. He also generally alleges that C/O Woodard's actions caused him severe pain, suffering, and humiliation. The record belies Plaintiff's allegations of severe physical injuries: Plaintiff's medical records and color photographs show that Plaintiff's arms had small abrasions, but no bleeding or red areas. Further, the attending nurse noted that Plaintiff had "good" range of movement in both arms, hands, and wrists. However, although Plaintiff fails to show that he suffered significant injury, even minor injuries and pain implicate the Eighth Amendment when unnecessarily and wantonly inflicted. See id.

Drawing all disputed facts and reasonable inferences in favor of the Plaintiff, Plaintiff has demonstrated a genuine dispute of material facts as to whether C/O Woodard used excessive force. Therefore, I deny the motion for summary judgment as to C/O Woodard. See Buonocore v. Harris, 65 F.3d 347, 359 (4th Cir. 1995) (holding that genuine disputes of material facts preclude summary judgment on whether a defendant is entitled to qualified immunity.).

**B.**

In his second claim, Plaintiff generally asserts that Warden Fleming was deliberately indifferent to C/O Woodard's unconstitutional actions when the warden witnessed, failed to correct, and encouraged the officer's misconduct. Plaintiff's first alleges that Warden Fleming "witnessed" and was personally involved in C/O Woodard's actions. Plaintiff has not proffered any factual support for his claim.

In order to set forth a claim for supervisory liability under § 1983, a plaintiff must show:

6

> (1) [T]hat the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw, 13 F.3d at 799 (internal quotation marks omitted).

Plaintiff fails to establish supervisory liability because Plaintiff's repeated general declarations of Warden Fleming's negligence cannot support a claim under the Eighth Amendment's Cruel and Unusual Punishments Clause. See Ruefly v. Landon, 825 F.2d 792, 794 (4th Cir. 1987) (holding that mere negligence cannot support a claim for violation of the Cruel and Unusual Punishments Clause). Further, Plaintiff's speculative and conclusory allegations do not satisfy the deliberate indifference standard because there is no evidence to support an inference that Warden Fleming had actual or constructive knowledge that C/O Woodard posed a pervasive and unreasonable risk of violating inmates' constitutional rights. In his affidavit, Warden Fleming specifically states that he had no knowledge that C/O Woodard ever used excessive force or discriminated against any inmate for any reason.

Plaintiff also argues that Warden Fleming failed to properly supervise his subordinates. However, Warden Fleming cannot be liable merely for the conduct of his subordinates because respondeat superior is not actionable via § 1983. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Accordingly, Warden Fleming is entitled to qualified immunity and summary judgment.

## IV.

For the foregoing reasons, Defendants' motion for summary judgment is denied in part as to C/O Woodard and it is granted in part as to Warden Fleming. The Clerk shall set this matter for a jury trial in the Big Stone Gap Division and transfer the case to the docket of the Honorable James P. Jones, United States District Judge.

**ENTER**: This 22nd day of March, 2018.

/s/ Jackson L. Kiser
Senior United States District Judge